3̄78

128 378
35a 624
128 378
51a 265
128 378
157 324
128 378
55a 428
128 378
86a 25

# Lewis Umlauf

*v.*

# Victoria Umlauf.

*Filed at Ottawa May 16, 1889.*

1. Divorce—*custody of the children.* Although the general rule that the custody of the children will be given to the party in whose favor the divorce is granted, is never enforced when the welfare of the children will be injuriously affected by its enforcement, yet it must be clearly shown that their welfare does really require the abrogation of the rule.

2. The right of the father is superior to that of every other person, and can only be made to yield when it is manifestly inconsistent with the health and welfare of the child.

3. In this State it may sometimes be proper to give to the mother the custody of the children in case of a divorce, even when the divorce is granted on account of her desertion of her husband.

4. The controlling consideration with a court of equity, when both the husband and the wife are equally fit to have the care of the children, is the welfare and best interests of the children, and not the gratification of either parent. In such cases, the custody is often given to the mother when the health or tender years of the children require her care and attention. The common law right of the father to the custody of his infant child will be made to yield to the discretionary power over the subject vested by the statute in the court.

5. In this case the considerations are stated which induce the court to give the custody of the oldest son, aged about ten years, to the father, and the youngest son, aged about seven, to his mother.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Egbert Jamieson, Judge, presiding.

Mr. William T. Ament, Mr. C. C. Strawn, and Mr. Edmund S. Holbrook, for the appellant:

A husband, on divorce for the fault of the wife, who is in all respects a proper, fit and competent person to have the custody of his minor sons, aged, respectively, seven years, and

nine years and six months, who is able and willing to have their custody, care and tuition, is entitled to their custody. 2 Bishop on Marriage and Divorce, secs. 532, 543; Stewart on Marriage and Divorce, sec. 402; Church on Habeas Corpus, secs. 441-443, and authorities cited; *State* v. *Stigall*, 2 Zabr. 286; *People* v. *Humphrey*, 24 Barb. 523; *Olmstead* v. *Olmstead*, 27 id. 9; *People* v. *Mercein*, 3 Hill, 399; *Clark* v. *Bayer*, 32 Ohio, 310; *Waring* v. *Waring*, 100 N. Y. 570; Rev. Stat. chap. 40, sec. 18; *Miner* v. *Miner*, 11 Ill. 49; *Hewitt* v. *Long*, 76 id. 406;

The facts in this case, *per se*, show that the best interests of these children are secured in their father's care and custody.

A husband who, on divorce for the fault of the wife, is in every respect a proper, fit and competent person to have the custody of his minor sons of proper age, and who is willing and able to support and maintain them in his own home, can not and ought not to be compelled, against his will, to maintain them elsewhere.

Messrs. BLANKE & CHYTRAUS, for the appellee:

When a divorce shall be decreed, the court may make such order touching the alimony and maintenance of the wife, the care, custody and support of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just.   Rev. Stat. chap. 40, sec. 18.

This statute has been repeatedly construed by this court to give the chancellor full discretion in the exercise of the powers conferred, regardless of the common law rights of the parties. *Reavis* v. *Reavis*, 1 Scam. 242; *Deenis* v. *Deenis*, 79 Ill. 74; *Hewitt* v. *Long*, 76 id. 399.

No certain rule can be laid down on the custody of children, except that their best interests must be consulted.   *Cowls* v. *Cowls*, 8 Ill. 440; *Hewitt* v. *Long*, 76 id. 408.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

Appellant filed a bill for divorce against appellee in the Superior Court of Cook County, and obtained a decree against her on April 22, 1887. The decree granted him a divorce on account of her desertion, but gave her the custody of the two children, one, a boy named Arthur, nine years old, and the other, a boy named Oscar, six years and six months old, and required him to pay her $40.00 monthly for the support of the two sons, being $20.00 per month for each, "until the further order of the court." The decree found that both appellant and appellee were fit and proper persons to have the care, custody and tuition of the children, but it also found that, "on account of the tender ages of and the present physical condition of the said children, it is for their better welfare that they remain under the custody, care and tuition of the defendant, their mother, in whose custody they have been for the past six years."

Appellant took no appeal from this decree, and has never sought to have it reviewed by writ of error. Though favorable to him upon the question of the divorce, it was against him, so far as the custody of the children, and the payment of money to the appellee for their support, were concerned. He submitted to the decree, and made the monthly payments from the date of the rendition of the decree on April 22, 1887, to the first Monday of November, 1887. On October 13, 1887, he filed his petition in the same court, asking for the custody of the children. This petition, on final hearing, was dismissed.

It may sometimes be proper to give the mother the custody of the children even where the divorce is granted on account of her own desertion of her husband. (*Reavis* v. *Reavis*, 1 Scam. 242; *Deenis* v. *Deenis*, 79 Ill. 74). The controlling consideration with a court of equity, where both the husband and the wife are equally fit to have the care of the children, is the welfare of the children, and not the gratification of either parent. In such cases, the custody is often given to the mother, where

the health or tender years of the children require her attention.
(2 Bishop on Mar. & Div. 532; Stewart on Mar. & Div. sec.
402; *Waring* v. *Waring*, 100 N. Y. 570). Under our statute,
the court may make such order touching "the care, custody
and support of the children, or any of them, as, from the cir-
cumstances of the parties and the nature of the case, shall be
fit, reasonable and just." (Rev. Stat. chap. 40, sec. 18). The
common law right of the father to the custody of the infant
child will be made to yield to the discretionary power over the
subject vested by the statute in the court, (*Hewitt* v. *Long*,
76 Ill. 399), where the best interests of the child demand it.

We are not prepared to say, that the decree of April, 1887,
based upon evidence not now before us, was not right and
proper at the time it was rendered. Indeed, the conduct of
the defendant for six months thereafter, and the language
contained in his petition, and in his brief filed in this court,
would seem to indicate that he himself considered the decree
as authorized by the facts as they then existed.

The 18th section of the Divorce Act provides, however, that
"the Court may, on application, from time to time, make such
alterations in the allowance of alimony and maintenance, and
the care, custody and support of the children as shall appear
reasonable and proper." The question then arises whether or
not it would have been reasonable and proper to modify or
change the terms of the decree, as to the custody of either
or both of these boys, when appellant's petition was dismissed
in December, 1887.

As to the younger boy, we are of the opinion, that it was
right to allow him to remain with his mother. He was barely
seven years of age in December, 1887. In addition to being
a delicate boy, he was lame. He is spoken of as being pale
and as having been so for several years. One of the physi-
cians says: "In the past I have treated the younger one the
most, treated him for typhoid fever and for malarial fever,
chiefly typhoid, during the time specified from March to June

of last year." He had not yet been shown to be strong enough to attend regularly at school. He was entered in one of the public schools in the second week of September, 1887, and left in the following month, attending five weeks altogether. The evidence shows, that he has evinced a strong attachment for his mother, and a decided disinclination to go to his father. To have taken him away from his mother, against his will and in his feeble condition, may have proved injurious to his health.

As to the older boy, we think, under all the facts in the case, his custody should have been awarded to his father. It is true, that, according to the testimony of the two physicians who have given their evidence in the case, he was a boy of an exceedingly delicate and nervous temperament, and might become afflicted with the disease, known as St. Vitus' dance, unless properly cared for. But he had been going to school for nearly two years, and was at school most of the time in the spring, summer and fall of 1887. At the time of the hearing he was nearly ten years old. His father met him on the street several times in May and June, 1887, and conversed with him, and he seemed to be well and in good spirits. He manifested a willingness to go with his father and to be in his company. He seemed to have more affection for his father than his younger brother exhibited. There is nothing in the evidence, which produces the impression, that it would injure his health or his spirits to take him from the custody of his mother. Henry M. Coburn, an attorney, who was with appellant during one of his interviews with the older son, and who appears to be an entirely disinterested witness, says: "Arthur said he would like to see his father frequently, but he was afraid his mother would punish him."

It has not been made to appear to us, that the desertion, of which appellee was found guilty, was induced by the fault of appellant. Although the general rule, that the custody of the children will be given to the party in whose favor the divorce is granted, is never enforced when the welfare of the children

will be injuriously affected by its enforcement, yet it must be clearly shown, that their welfare does really require the abrogation of the rule. After a careful study of this record, we are not led to the conclusion, that the true interests of the oldest son, either mental, moral or physical, will suffer in any way by placing him under the control of his father.

The proof shows that the appellant is a man of good character. There is nothing to indicate, that he is unworthy of being intrusted with the care of his son. He has a comfortable home of his own, well supplied with books and the usual and necessary comforts of life. He has two daughters by a former marriage, who keep house for him.

It is also true that the appellee is a good woman. There is not one word of proof to the contrary. But she is a dressmaker by trade and pursues that business, having under her charge, most of the time, quite a number of employees. She occupies a house of four stories, renting the rooms on the third and fourth floors, and reserving for herself the first and second floors. Being thus actively engaged in business, she can not devote to both of her boys as much time and attention, as she would be able to give them if she were differently situated. Particularly is this the case with Arthur, who, as the older of the two, will not be as much under her notice as his younger and more afflicted brother. Unquestionably no other person can feel for a boy as his mother does, or show to him the love and affection, which he receives from his mother. But the rule is "that the right of the father is superior to that of every other person, and can only be made to yield when it is manifestly inconsistent with the health and welfare of the child." (3 Smith's Lead. Cases in Eq. 375.) We can not say, that it will be "manifestly inconsistent with the health and welfare of the child," Arthur, that he shall be reared in his father's home, and under the care of his father and his older sisters.

The judgment of the Appellate Court and the decree of the Superior Court are reversed, and the cause is remanded to the

Superior Court, with directions to so modify its decree as to give the custody of the oldest child to the appellant, and to so reduce the amount to be paid monthly by the appellant as to require him to pay appellee $20.00 per month, instead of $40.00 per month, for the support of the youngest child, and with further directions to provide that both appellant and appellee shall have the privilege of visiting and freely communicating with both of said children. The costs of this proceeding must be paid by the appellant.    *Judgment reversed.*