JENSEN, Appellant, vs. JENSEN, Respondent.

*January 8—February 4, 1919.*

*Parent and child: Right to custody: Child's welfare paramount: Unfitness of mother: Marriage within year after divorce.*

1. The paramount right of the father to the custody of his children, recognized by the common law and by the words of our statute (secs. 3964, 3965, Stats.), has become a mere *prima facie* right. The welfare of the child is now the controlling consideration; and with regard to children of tender

years, especially girls, preference will ordinarily be given to the mother, other things being equal and she not being unfit.

2. The fact that, within three months after divorce from the father, the mother of a girl of tender years was, in violation of our divorce statute, in form married to another man in another state and thereafter lived with him as his wife in this state, does not conclusively show depravity of heart or moral unfitness to bring up the child.

3. Where, in such case, the mother claimed, and there was a probability, that she supposed the second marriage would be lawful, and there was no other suggestion of unfitness, the child should not be taken from her care; especially when it appeared that with her the child had a good home and was well taken care of, and that the father would probably not be able to give her personal attention but expected to leave her care to grandparents.

APPEAL from an order of the municipal court of Racine county: WILLIAM SMIEDING, JR., Judge. *Reversed.*

This is an appeal from an order after judgment in a divorce action, changing the custody of the minor child of the parties from the mother to the father. The parties lived in Racine and were divorced at the suit of the wife March 24, 1917, and the custody of their only child, Dorothy, then four and one-half years of age, was awarded to the plaintiff, the defendant being required to pay the plaintiff $5 weekly for the child's support. July 5, 1917, the plaintiff went to Michigan with one Jepeway and was in form married to him. She returned to Wisconsin with Jepeway and was thereafter supported by him at Racine. March 25, 1918, the plaintiff and Jepeway went to Waukegan, Illinois, and again went through a marriage ceremony, and from that time lived together in Racine as man and wife. In April, 1918, a child was born as a result of the plaintiff's second marriage. The plaintiff and her present husband maintain a home at Racine, and the child Dorothy has lived with them. The testimony shows without substantial contradiction that the child has been well taken care of according to its station in life and is happy in her home with her mother.

The defendant is a machinist. He has at present no home in Racine, but lives with his parents, who own a good home in that city. For more than a year just prior to the hearing of the motion he had been employed at a government munition plant at Sharon, Pennsylvania, and had received an injury in the eye which incapacitated him from labor for some months. During this time he paid no money for the support of the child because he was earning nothing, and on June 1, 1918, there was $190 past due thereon. The defendant's parents, who are about fifty years of age, are willing to take the child and give it a home and educate it. The court found the mother not a fit person to have the care of the child and changed its custody to the father on condition that he pay the amount past due for its support and also pay to plaintiff's attorneys a balance still due them for attorneys' fees in the case.

For the appellant there was a brief signed by *Storms, Foley & Beck* of Racine, attorneys, and *Jerome J. Foley,* of counsel, and oral argument by *William W. Storms.*

*Guy A. Benson* of Racine, for the respondent.

WINSLOW, C. J.    The paramount right of the father to the custody of his children, which was recognized by the common law and by the words of our statute (secs. 3964, 3965, Stats.), has become the merest *prima facie* right, which yields readily when it is shown not to be best for the child. *Welch v. Welch,* 33 Wis. 534; *Sheers v. Stein,* 75 Wis. 44, 43 N. W. 728. The welfare of the child is now the controlling consideration; and with regard to children of tender years, especially girls, preference will ordinarily be given to the mother, other things being equal and she not being unfit. The reasons for this last rule are very obvious and need not be elaborated here. *Umlauf v. Umlauf,* 128 Ill. 378, 21 N. E. 600; *Brandon v. Brandon,* 14 Kan. 342; *Smith v. Smith,* 15 Wash. 237, 46 Pac. 234.

In the present case the evidence affirmatively shows that the child is furnished a good home by her mother and is

well taken care of. Really the only substantial argument which can be advanced in support of the order changing the custody is that the mother has conclusively shown moral unfitness by reason of her attempted marriage to and cohabitation with Jepeway in Michigan three months after the divorce decree was pronounced, in violation of our divorce statute, which provides that the decree shall not be effective, so far as the status of the parties is concerned, until the expiration of one year. Secs. 2330, 2374, Stats.

This act was of course a violation of law, but it does not necessarily demonstrate depravity of heart or moral unfitness to bring up a child. While this court has held that the Wisconsin divorce statute prohibits Wisconsin citizens from evading its provisions by making a trip to another state and there contracting another marriage during the year *(Lanham v. Lanham,* 136 Wis. 360, 117 N. W. 787), the argument that statutes of this nature can have no extraterritorial effect was very strongly made in that case and has been successfully made in some jurisdictions. *Dudley v. Dudley,* 151 Iowa, 142, 130 N. W. 785, and cases cited in the opinion in that case. Both of the participants in the transaction here in question claim that they supposed they could lawfully be married.

There is no evidence that the plaintiff was specifically advised that she might not marry within the year in another state or had any knowledge of the sweeping construction which this court had placed upon the law. If, as seems probably the fact, she supposed that the divorce was complete and that she was simply forbidden to remarry for a year, her act in remarrying does not place her in the same class as the wilful adulteress, nor does it necessarily stamp her as an unfit person to bring up her child. The moral quality of many acts depends upon the condition of the mind and the information possessed by the actor, and this is such an act.

We do not think that, in the absence of any other claim of unfitness and in the face of proof showing that the child is being well taken care of, a girl of tender years should

have been taken from its mother's care; especially when it
appeared that the father would probably not be able to give
the child personal attention, but expected to leave its care
to grandparents.

*By the Court.*—Order reversed, with costs, and action re-
manded with directions to dismiss the petition.