IN RE ALLEY.

*March 12—April 5, 1921.*

*Parent and child: Right to custody: Infants: Habitual truants: Refusal to attend school: Delinquent children: Commitment to industrial school: Grounds.*

1. The right of the father or, in case of his death, of the mother to the custody of a minor, preserved by sec. 3964, Stats., is a substantial right.
2. The provision of sec. 40.73, Stats., relative to compulsory school attendance, that any person proceeded against thereunder may prove in defense his inability to compel a child under his control to attend school and shall thereupon be discharged and that the child shall be proceeded against as incorrigible, contemplates that the parent shall first be proceeded against if a child within his care and custody does not comply with the law relating to compulsory school attendance.
3. A boy twelve years old who during the school year was absent fifty-seven and one-half days, usually on Friday, with his father's consent, for the purpose of working to earn money with which to buy clothes, was not "habitually truant" within the meaning of sec. 48.01, relative to delinquent children.
4. "Habitual truancy" amounting to delinquency under sec. 48.01 is a refusal to attend school in defiance of parental authority; and a child can only be held a truant when the parent is unable to compel compliance by the child with the provisions of the compulsory school attendance law.
5. Under the statutes relative to compulsory school attendance, a parent no longer has the right to decide whether his child shall attend school or work, the law determining that for him.
6. A child should not be deprived of a home or a parent of the right to the child's custody and care under the juvenile laws except in cases where the best interests of the child clearly warrant such step; and any doubt should be resolved in favor of the home though it be imperfect and though its standards be not of the highest.

7. Secs. 48.01 to 48.34, relative to delinquent children, do not provide a method of punishment for crimes committed by juveniles, but of improving the child's condition, and cannot be construed and applied as a punitive statute.

8. A child cannot be committed to an industrial school as a delinquent child on the ground that his home is not a fit and proper place for him where the father, though earning low wages, has done the best he could and the home is as good as thousands of other homes existing under like circumstances.

9. Where a boy twelve years old attempted to frighten his schoolmates and their teacher by exploding dynamite caps and fuse, but without expecting or anticipating that another boy would pick up a lighted fuse and be injured thereby, he cannot be committed to the industrial school for boys as a delinquent.

APPEAL from an order of the county court of Price county: ASA K. OWEN, Judge. *Reversed.*

It appears from the petition of Gus Krakau that Arnold Alley was a child at the time of the trial twelve years of age, residing at Phillips, Price county, Wisconsin; that on the 26th day of May, 1920, said Arnold Alley came into the possession of some dynamite caps and fuses; that he attached the fuse to one cap and threw it in such a manner that it was picked up by Rudolph Krakau, son of the complainant, and while in his hand exploded, severely injuring the child's hand. The petition further alleged that Arnold Alley was a delinquent child, and, upon information and belief, that he was incorrigible, growing up in idleness and crime, and that he fails and neglects to attend school, although of school age and physically able to do so; that he is habitually truant and insubordinate in and out of school. There was a trial. The court found that Arnold Alley was born on the 15th day of July, 1908; that he is a resident of Phillips; that he has been during the school year just closed habitually truant; that he was incorrigible and delinquent, and that a due regard for the morals and welfare of said Arnold Alley requires that he be committed to the Wisconsin industrial school for boys. From the order *David Alley,* father of Arnold, appeals.

The cause was submitted for the appellant on the briefs of *Barry & Barry* of Phillips, and for the *State* on the brief of the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *C. E. Lovett,* district attorney of Price county.

ROSENBERRY, J. It is contended by the appellant that the evidence does not sustain the findings and that the court was therefore in error in ordering the child committed to the Wisconsin industrial school for boys. In our consideration of this matter we are, of course, limited to the matters appearing of record. From the record the following facts appear, stating them most favorably for the state: Arnold was absent during the school year fifty-seven and one-half days, it not appearing whether the absences were excused or unexcused. His class standings were poor, the grades running, beginning with the highest, A, B, C, D, and E. He received two Cs and six Ds. It appeared that the absences were usually upon Friday and were with the consent of the father, and that he was permitted to be absent for the purpose of working in order to earn money with which to buy himself clothes. There was a school picnic to which Arnold was not invited. Against the protest of the teacher he accompanied the children. While on the way to the picnic grounds some of the boys left the party to get a drink of water. Arnold joined this party and had in his possession some dynamite caps and some fuse. He attached a fuse to one cap and exploded it, as he says, for the purpose of frightening the party. A fuse was attached to a second cap, lighted, and then thrown out, and was picked up by the son of the complainant. It exploded in his hand, producing serious injuries. Arnold's mother died in 1914, leaving him and five other children. Arnold's grandfather is also a member of the family. After the death of the mother the family was cared for by the daughters. The father is a common laborer and at the time of the mother's death was receiving $1.50

a day, which was just sufficient to enable him to provide for his family. It appears that the boy minds his father and the father offered to see, if the boy was put on probation, that he attended school. It further appeared that the father punished the boy for swearing and for skipping school. There is no evidence that he was guilty of any other form of delinquency. It appeared upon cross-examination that Arnold thought if he frightened the picnic party away he would be able to steal their lunch. It appeared also that he has at times stayed around the railroad tracks, climbing on cars, but after the injury of another boy had quit that practice. It appears that the complaint was prompted by the conduct of Arnold which resulted in the injuries sustained by the Krakau child.

While it is said in *Jensen v. Jensen,* 168 Wis. 502, 170 N. W. 735, that the paramount right of the father to the custody of his children has become the merest *prima facie* right, which yields readily when it is shown not to be for the best interests of the child, that language must be understood in connection with the facts in that case. There was a contest between the father and the mother as to the custody of an infant girl Dorothy, four and one-half years of age. The question here involved and in most cases of child delinquency is whether or not the interest of the child will be promoted by taking the child out of the family and placing it in a public institution, which is a question fundamentally different from that involved in the *Jensen Case.* Sec. 3964, Stats., declares:

"The father of the minor, if living, and in case of his death the mother, being themselves respectively competent to transact their own business and not otherwise unsuitable, shall be entitled to the custody of the person and estate of the minor, and to the care of his education."

This statute has not been repealed and the rights preserved to the father and mother under that section still remain, and they are substantial rights.

When the court finds any child to be delinquent under sec. 48.08, Stats., it may by order place the child on probation or cause the child to be placed in a suitable family home or institution, subject to the friendly supervision of the probation officer, or commit the child to an industrial school for boys and girls respectively. By sub. (b), sec. 48.01, a delinquent child includes any boy under the age of seventeen years who violates any law of this state the penalty for which is not imprisonment in the state prison, or who is incorrigible, or who is growing up in idleness or crime, or who loafs or congregates with groups or gangs of other boys about any railroad yard or tracks, or who habitually uses any vulgar or profane language, or who is habitually truant or habitually insubordinate in any school.

In this case the court found that Arnold was habitually truant and incorrigible and upon that finding holds that he is delinquent within the meaning of sec. 48.01, and by the judgment of the court the father is deprived of the care and custody of his child, the child is taken out of the family and sent to a public institution. Sec. 40.73, which defines compulsory school attendance, contains the following provision:

"Any person who shall be proceeded against under the provisions of this subsection may prove in defense that he is unable to compel the child under his control to attend school or to work, and he shall be thereupon discharged from liability, and such child shall be proceeded against as incorrigible, or otherwise, according to law, and in case of commitment, if the parents or person having control of such child desire it, such child shall be committed to a school or association controlled by persons of the same religious faith as such child, which is willing and able to receive and maintain it without compensation from the public treasury."

The law contemplates that the parent shall first be proceeded against if for any reason a child within his care and custody does not comply with the law relating to compulsory school attendance. There is no evidence in this case that the truant officer, the school authorities, or any one else had

called the attention of the father of Arnold to the fact that he was not attending school, and the evidence does show that when he was absent he was at work, at least a part of the time. The statute does not define the words "habitually truant." We think the evidence comes far short in this case of establishing the sort of "habitual truancy" upon which a finding of delinquency may be based. It must be borne in mind that the habitual truancy which amounts to delinquency is a refusal to attend school in defiance of parental authority. It is the intention and purpose of the statute that the child shall not be held a truant except in cases where the parent is unable to compel compliance by his child with the provisions of the compulsory school attendance law. The child Arnold in this case, if he can properly be said to be a truant at all, which is very doubtful in view of the fact that his absence was consented to by his father, was certainly far from being habitually truant within the meaning of sec. 48.01.

It may well be that there are parents in the state of Wisconsin who do not fully understand the purpose and objects of our recent legislation in regard to the education, protection, and reformation of children and that such legislation imposes upon parents a positive duty and a much higher obligation than that under which many parents suppose themselves to labor. The parent no longer has the right to decide whether his child shall attend school or work; the law determines that for him.

It is not the intent and purpose of the statute to visit upon the child a penalty for the neglect of his parent. Unless our juvenile laws are sympathetically and understandingly administered, they are likely to result in more harm than good. Properly administered they may become instruments of great value to the state. They certainly should not be administered as a criminal statute. It is the intent and purpose of the law to supplement the home in cases where it is needful. A result should not be arrived at which deprives a child of a home, or a parent of the right to the custody

and care of the child, except in cases where the best interests of the child clearly warrant such a step. Doubt should be resolved in favor of the home even though it be imperfect and even though its standards be not of the highest. Its. imperfections must be striking and its standards low indeed if the child would be benefited by being committed to the care of a public institution where it will be deprived not only of freedom, the love of friends and relatives, but will be branded with a stigma which years of subsequent good conduct may partially erase but never entirely remove.

It is argued on behalf of the state that the child Arnold is guilty of an offense. The findings made by the court are as previously stated. In the recitals of the order committing the child to the Wisconsin industrial school for boys there is an attempt on the part of the court to amplify the findings. If such recitals be treated as findings, we are of the opinion that the evidence is wholly insufficient to sustain the finding that the child Arnold "was guilty of wilfully and recklessly lighting and throwing near small children on a school picnic two fuses with dynamite caps attached, which caps exploded, and one of which, being picked up by a small child, caused severe mutilation of one of his hands;" that "he stole the caps and fuse and threw such fuse and caps with the intention of scaring away the teacher and children on the picnic so that he and other boys with him could steal the lunch." The evidence in this case establishes no more than that the child Arnold, in the endeavor to carry out a boyish prank, having found the caps and fuse in question near a stump apparently abandoned, attempted to frighten the teacher and children by exploding them. Neither do we think that the recital that Arnold is without proper parental control and that he is incorrigible and delinquent can be sustained. The trial court seems to have misconceived the object and purposes of the provisions of ch. 48, Stats. This law was not designed as a method of punishment for crimes committed by juveniles. Every section and paragraph of the statute is permeated with the benevolent purpose of improving the

child's condition and not with punishing his past conduct. The whole object and purpose of this law will be defeated if it is construed and applied as a punitive statute.

. We can find no evidence which sustains the recital that Arnold's home is not a fit and proper place for him. It appears that the father, although earning low wages, having the care of an aged father as well as his children, has been able to provide a home which is now paid for, and, so far as the evidence shows anything, it shows that the father is a hard-working, industrious, frugal, thrifty man. While the children have suffered an irreparable loss in the death of their mother, there is nothing in the case which warrants the finding that the home is not as good as thousands of other homes which exist under like circumstances. We find nothing in the record which suggests on the part of the father any lack of interest in his children, or lack of affection for them, or lack of desire to do for them all that his circumstances permit. He has, no doubt, done the best he could, and he ought not to be penalized for his failure to do more. The accident to the child of the complaining witness was most unfortunate. Dangerous situations and instruments have a well known fascination for children. There is nothing to indicate that Arnold intended to do more than frighten his schoolmates and their teacher or that he expected or anticipated that the Krakau boy would pick up this lighted fuse. The circumstances are most regrettable, but neither the interests of the child nor those of society at large will be advanced by the infliction of such a penalty as the judgment of the court prescribes in this case.

*By the Court.*—The order and judgment of the county court of Price county, sitting as a juvenile court, is reversed, and the clerk of this court is directed to forthwith remit the record in this case to the county court of Price county, and the Wisconsin industrial school for boys is directed to forthwith surrender the custody of the child Arnold to his father, the appellant here.