Hillsborough, } No. 3238.
May 6, 1941. }

STATE *v.* ROLAND LEFEBVRE *& a.*

*Edward J. Lampron*, City Solicitor, *J. Vincent Broderick*, County Solicitor, and *Frank R. Kenison*, Attorney-General (*Mr. Kenison* orally), for the State.

*Morris D. Stein* and *Hayden C. Covington* (of New York), (*Mr. Covington* orally), for the Lefebvres.

*Arthur Garfield Hays* and *Franklin S. Pollak* (both of New York) (*Winthrop Wadleigh* on the brief), for the American Civil Liberties Union, *amici curiae*.

PAGE, J. The title of the case is erroneous. Since Chapter 110 of the Public Laws relating to neglected and delinquent children is not penal, but protective (*State* v. *Burt*, 75 N. H. 64, 66), the title should not be criminal in form. In accordance with the spirit of the act, it would be proper to entitle the case *In re Roland Lefebvre and others*.

Chapter 110 authorizes change in the custody of a neglected or delinquent child who is under the age of eighteen (Sections 1, 2, 3, 4, 9, 10, 13). The children here involved were brought before the Juvenile Session upon allegations by the Attendance Officer of the public schools of Nashua that Roland, Loraine and Loretta (whose respective ages are fifteen, twelve and ten) had without excuse failed to attend either the public school to which they had been assigned or an approved private school, during the period from October 10, 1940, to December 18, 1940. The agreed fact as to

each is that attendance at public school was regular from the date of opening on September 4 until October 9, 1940, when the school authorities suspended all of them until such time as they should consent to salute the American flag. The only reason for their suspension was their refusal to join in the salute.

The school attended by them had long had a regulation requiring such a salute, and the regulation was approved by the State Board of Education. These children declined to join in the ceremony, assigning as reason that they and their parents were "Jehovah's Witnesses" and that they believed that the Scriptures forbid the salute as a form of idolatry. It is conceded that the belief, however strange, is one of religious conscience and is held in good faith. The children asked to be excused from participation in the ceremony, their request was denied, and the suspensions followed.

The parents of the children, being too poor to place them in an approved private school, provided instruction in their own home, which did not meet with the approval of the school authorities. By proceedings which seem to be regular in form, the children were brought before the Juvenile Session, adjudged delinquent and committed to the Industrial School for the periods of their respective minorities. Pending argument and decision of this appeal, we ordered execution of the order to be stayed and the children to be released from the Industrial School and remanded to the custody of their parents.

We shall discuss the problem presented at first upon general grounds, with later consideration of the specific provisions of our statute. If the order appealed from is executed, these three children and their parents will be visited by the breaking up of the family, an institution of primary value in our social life. The reason for the breaking up of the family would be no more than the conscientious acts of the children, based upon the religious teachings of their parents. Granted that the school authorities may discipline the children by excluding them from the benefits of the public instruction that normally is the office of the State (Constitution, Part Second, Article 83), the question still remains whether the statute relating to neglected and delinquent children was intended to operate in such a situation as this.

It is generally held that the purpose of such statutes is not penal, but protective. It is not that the child shall be punished for breach of a law or regulation, but that he shall have a better chance to become a worthy citizen. *State* v. *Burt, supra; In re Hook,* 95 Vt.

497; *Wisconsin Industrial School* v. *Clark County*, 103 Wis. 651; *Commonwealth* v. *Carnes*, 82 Pa. Super., 335; *Mill* v. *Brown*, 31 Utah, 473. If the child is found to be neglected or delinquent, as defined in the statute, the parents may be deprived of custody and the guardianship of the State substituted. *People* v. *Pikunas*, 260 N. Y. 72. But this should be done, if the legislative intent is to be effected, only upon a pretty clear showing that the family environment is defective and that the State can plainly better the child by a change of custody and control. *Ex parte Drye*, 250 Mich. 210; *Mill* v. *Brown, supra; In re Alley*, 174 Wis. 85. That some one condition, or more, might be improved should be balanced against whatever advantages the home may offer in the way of normal environment. *Hollis* v. *Brownell*, 129 Kan. 818.

The poverty of the parents may be of slight import compared with the factors of love and a moral atmosphere. "Doubt should be resolved in favor of the home even though it be imperfect and even though its standards be not of the highest. Its imperfections must be striking and its standards low indeed if the child would be benefitted by being committed to the care of a public institution where it will be deprived not only of freedom, the love of friends and relatives, but will be branded with a stigma which years of subsequent good conduct may partially erase but never entirely remove." *In re Alley, supra*, 91.

Loving parents who do their best for their children in support, nurture and admonition are of more worth than pecuniary means. Righteous and generous motives may be of more importance than notions that chime with majority opinions of what is good form or what is the best method of teaching patriotism. It would be one thing to say that the legislature intended to permit school authorities to prescribe ceremonial forms for such teaching and to exclude from public school privileges those children who decline, from whatever motive, to conform. But in view of the sacredness in which the State has always held freedom of religious conscience, it is impossible for us to attribute to the legislature an intent to authorize the breaking up of family life for no other reason than because some of its members have conscientious religious scruples not shared by the majority of the community, at least provided those scruples are exercised in good faith, and their exercise is not tinged with immorality or marked by damage to the rights of others. The purity of the action of the children in these regards is admitted.

Speaking with direct reference to our statute concerning juvenile

courts, jurisdiction is limited to neglected and delinquent children. A neglected child is one who is abandoned by his parent; who habitually begs or receives alms; who is found in any disreputable place; who associates with vicious or disreputable persons; whose home is unfit because of (a) neglect, cruelty or depravity of his parents, or (b) the failure of his parents to provide proper subsistence, education, medical or surgical care or other care necessary for his health, morals or well-being; or who engages in an occupation or is in such surroundings as may prove injurious to the child's physical, mental or moral well-being.

There is not the faintest suggestion that any of these children are thus neglected except as to the financial inability of their parents to give them private education equal to that provided by the public schools, now denied to the children. If the parents have failed in that, it is very clearly not their fault (nor is it the fault of their children) in any immoral or anti-social sense. As far as appears the parents wish these children to have the education that is open to all except those children who have conscientious scruples against saluting the flag. Neither they nor the children appear to object to education in patriotism; the only part of the patriotic program of the public schools with which they differ is the symbolic ceremonial of the salute to the flag. We cannot believe that the legislature intended to call such children neglected by their parents, or to subject them to being torn from their parents, much less confined in an institution. We do not follow *Marsh's Case*, 140 Pa. Sup. 472.

Nor is any of these children delinquent as defined in our statute. The State now seems to make no serious claim of the sort, no contention that a child excluded from school by the authorities, under such circumstances as existed here, is habitually truant. The statutory definition of "delinquent child" is one "who violates any law of this State or any city or town ordinance, or who is wayward, disobedient or uncontrolled by his parent, guardian or custodian, or who is habitually truant from school or home, or so deports himself as to injure or endanger the health or morals of himself or others." P. L. c. 110, s. 1; Laws 1937, c. 152, s. 2. We find no intent of the legislature to treat as delinquents those who are excluded from attendance because they act in good faith from conscientious motives, without injury to the health or morals of themselves or others.

The right of the school authorities to prescribe the ceremonial or to expel the children is not now in issue. But if the right were to be assumed, as to which there may be serious issues now unneces-

sary to decide, the conclusion we have reached leaves matters in this position. The exclusion of the children from public education remits them to the proper custody of their parents for such education as the parents can give them. If there be a resultant want of education, there appears to be no way known to existing law by which the want may be supplied. If the parents could be penalized for not sending the children to an approved school (which they are unable to do), such action would not result in proper education for the children, if they wish to exercise their undoubted rights of conscience, while the school authorities still insist that they salute the flag as a condition to their receiving suitable education. We cannot order the school authorities to revoke the suspension of the children. Still less can we order the children, in spite of their conscientious religious scruples, to salute the flag so that they may be accepted again as students in the schools. *In re Jones*, 24 N. Y. S. (2d), 10. The statutes confer no power to accomplish any of those results, and there might be grave doubt as to the constitutionality of an act giving the last power mentioned. What might be done with mutual tact and tolerance, by way of persuasion of the children and their parents, or by way of amendment of the regulation, or its partial suspension, rather than by attempted compulsion, lies in the legislative and administrative fields, not in the judicial.

Nothing in this opinion is to be taken as affirming or denying the criminal liability of the parents for not compelling these children to attend school on the conditions imposed by the School Board. The question whether *State* v. *Drew*, 89 N. H. 54 controls such a situation is not before us.

<em>Complaints dismissed.</em>

All concurred.