Georgia Frances Kent, Appellant, v. Kenneth W. Kent, Appellee.

DADY, J., dissenting.

Heard in this court at the May term, 1942. Opinion filed June 27, 1942.

KARNS & BANDY, of East St. Louis, for appellant.

No appearance for appellee.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal by defendant appellant, Georgia Frances Kent (hereinafter called defendant), from a decree of the city court of East St. Louis, Illinois, awarding custody of a child to the father, who is the plaintiff appellee in this proceeding (hereinafter called plaintiff).

The record in this case shows that the plaintiff and defendant were divorced in the city court of East St. Louis, Illinois, on the 9th day of November, 1935, the decree being given to Kenneth W. Kent on the grounds of desertion, and by the terms of said decree the sole care, custody and education of their minor child, William Kenneth Kent, was awarded to Amy Dietzel, mother of the defendant herein, and there was included in said decree, a provision providing that the plaintiff should pay the sum of $2.50 per week for the support of said minor child until said child reached its majority, or until the further order of the court.

On the 27th day of September, 1941, the plaintiff herein filed a petition in the city court of East St.

Louis, Illinois, to modify the decree entered on November 9, 1935 and, among other things set forth in said petition, the plaintiff herein alleged that he had paid the support money provided for in said decree, each week, with the exception of a short period when he was unemployed, and that while he was unemployed he reported said fact to the court. Plaintiff further alleged that since said .divorce and during the time that the custody of said child was awarded to Amy Dietzel, said child was for a long period of time placed in an orphanage, and during the past two years, had been in the custody of Arthur and Ruth Kremmel, residents of St. Clair county, who are strangers to this suit and who are of no kin to the said minor child, and that said custody of the child was given to the said Arthur and Ruth Kremmel by the said Amy Dietzel.

Plaintiff further alleged that since said decree of divorce he has remarried and has established a home, and his family now consists of himself, his wife, and a child, and that it works a great hardship upon him to maintain the said William Kenneth Kent in the home of strangers; that he and his present wife are willing, ready, and anxious to have the custody of the said minor child return to plaintiff where he can be brought up by his natural parent and given the advantage of a normal home life, and that it is fit and proper and for the best interests of said child that the custody of said child be awarded to the plaintiff herein. Plaintiff prayed the court to enter an order amending the decree and awarding the sole care, custody and education of the minor child, William Kenneth Kent, to the plaintiff herein.

A hearing on this petition to modify the decree was had on the 10th day of October, 1941, at that time it was stipulated that notice was given to the defendant, Georgia Frances Kent, of the hearing on said motion, and she was present in open court at the time of said hearing, and represented by counsel. There was also

present in open court on the hearing of this petition, in addition to the plaintiff and defendant herein, the present wife of the plaintiff herein, Mrs. Arthur Kremmel, and Mrs. Amy Dietzel.

From the evidence of the plaintiff herein, it appears that William Kenneth Kent is now seven years of age. Plaintiff testified that a short time after the decree was entered in this case, the said William Kenneth Kent was placed in an orphanage and remained there for about two years, when the defendant herein took said child from the orphanage and kept him for a time, that the said child is now living with Mr. and Mrs. Arthur Kremmel, and has been with them for about two years. Plaintiff testified that he never at any time gave his permission that the custody of the child be given to Mr. and Mrs. Kremmel, but that during all the time while he was employed and while the child was residing with the Kremmels he made the payments to the clerk of the court, as was provided for for the support of said child. Plaintiff testified that he has remarried on February 6, 1937, and that he now has a 17-months-old daughter by his second wife, and that they reside in a two-room house. Plaintiff testified that he was able and anxious to have his son reside with him. On cross-examination, plaintiff stated that around Easter time (before the filing of this petition), his second wife thought it would be possible for him to go to see his son and he did so and brought the boy to his home over the week end, and when it was time to return him to the Kremmel home, the boy cried and wanted to stay with him and asked his stepmother "if she wouldn't ask if there was some way if he couldn't come home." Plaintiff testified concerning his affection for the boy, and gave expression to his desire to have the child come and make his home with him. It appears from the evidence that plaintiff is employed at the National Stock Yards and makes $29 a week. Plaintiff when asked the following question: "Q. Can you now tell the Court what reason—good reason—

there could be for taking this boy from the good home you admit he is living in, to your two-room home, as you already have one child to support; can you tell the Court any reason why that should be done?'' made the following answer: ''A. Sure. Because he is my child and I love him.''

Ruth Kent, the present wife of the plaintiff herein, when called as a witness, testified to her affection for this stepson and stated that she was willing that this child of her husband come back into her home, and stated that she would give the child the same care and love and affection as if it were her own child.

Mrs. Arthur Kremmel, called as a witness on behalf of the defendant, testified that the Kent boy resided at her home and that he had been there for about two and a half years; and that she had become very much attached to him. From her testimony it appears the boy is attending school, and also is receiving religious education. She testified that Mrs. Dietzel had arranged for her to take the child and that she had consulted an attorney about instituting a suit to adopt this child, and that it was her opinion that if the court left the child in the custody of Mrs. Dietzel, she intended to turn it over to her, and permit her to adopt it. It further appears from the evidence that Mrs. Kremmel not only had the consent of Mrs. Dietzel to adopt the child, but that she also had the consent of the mother of the child.

Mrs. Amy Dietzel, the maternal grandmother of the child testified concerning the home of Ruth and Arthur Kremmel, and from her evidence, and all the evidence in this record, it appears that the Kremmels are people of good standing and maintain a good home. This witness gave expression to the opinion that the best interests of the boy would not be served by turning him over to his father.

Georgia Frances Kent, the mother of the boy, testified among other things, that it was her belief that it would not be to the best interests of the child to turn him over

to his father, and that she felt it would be for the child's best interests for him to remain with the Kremmels. This witness, while expressing some desire (in her testimony), for the custody of the child, stated that if the Kremmels wanted to adopt the child, she was willing that they should do so.

On the 24th day of October, 1941, a modified decree was filed in this cause, which said modified decree is as follows:

"STATE OF ILLINOIS ⎫ ss       In the City Court of
COUNTY OF ST. CLAIR ⎭      East St. Louis, Illinois

KENNETH KENT
           Plaintiff
    —vs—       In Chancery
GEORGIA FRANCES KENT      No. 4473
           Defendant

MODIFIED DECREE

This matter coming on to be heard on the petition of Kenneth Kent, plaintiff, for modification of decree, and it appearing to the Court that all parties are in Court with respective counsel, Wendell J. Phillips, for Kenneth Kent, plaintiff and petitioner herein, and Harold J. Bandy, for Georgia Frances Kent, defendant, and Amy Dietzel, respondents herein; and the Court having heard the testimony of witnesses and arguments of counsel, and having jurisdiction and being fully advised;

It is therefore ordered, adjudged and decreed that the decree for divorce heretofore entered on, to-wit; November 9, A.D. 1935, with respect to the care, custody and education of William Kenneth Kent, minor child be modified, and that the sole care, custody, and education of the said minor child formerly awarded to Amy Dietzel, mother of Georgia Frances Kent, defendant, in said decree, be and is hereby awarded to Kenneth Kent, father of said minor child.

It is further ordered, adjudged and decreed that Kenneth Kent be and he is hereby relieved from making fur-

ther payments to Amy Dietzel, grandmother of said minor child for the care, custody and education of said child, said payments to stop on the 10th day of October, 1941.

It is further ordered, adjudged and decreed that the child be delivered by the respondents or their agent to the petitioner herein, or his agent, within five (5) days from the filing of this decree and until further order of this Court.

It is further ordered, adjudged and decreed that Georgia Frances Kent, mother of said minor child, and Amy Dietzel, grandmother of said minor child, may have the right to visit the said minor child at any reasonable time.

The foregoing supplemental decree approved by me this 24th day of October, 1941.

RALPH COOK<br>Judge

Filed
City Court
East St. Louis, Ill.
Oct. 24, 1941
J. T. Desmond, Clerk.''

In determining the question of the custody of children where the parents have been divorced, it is uniformly held that the primary question for consideration is what is for the best interests of the child (*People v. Schaedel,* 340 Ill. 560, 563; *Mahon v. People ex rel. Robertson,* 218 Ill. 171; *Umlauf v. Umlauf,* 128 Ill. 378; *Hewitt v. Long,* 76 Ill. 399).

It is urged on this appeal that the court erred in awarding the custody of this boy to his father for the reason that the parties with whom the boy was living could do more for the boy in a financial way than his father could. We have never known of any court adopting this line of reasoning and we decline to do so.

It is further urged that this father should not have the custody of his son for the reason that his interest in the

boy is of recent origin and that the record does not disclose fatherly conduct toward this boy by the father on all occasions. We believe that the present manifestation of interest in this boy on the part of his father should be encouraged and not discouraged. We prefer to determine this father's right to the custody of his son by his present conduct and not by his past conduct. We decline to say the father of this boy has been guilty of lack of interest or of conduct so unbecoming of a father as to forfeit his right to his son's custody.

The trial court heard the evidence in connection with the petition to modify this decree, and a wide latitude is properly given to a court to exercise its sound discretion in matters of this character, and we would not be at liberty to disturb the finding of the trial court, unless we were able to say that proper and sufficient evidence had not been produced to warrant the modifying of the decree in this cause. This case was tried before the court, without a jury, and as a court of review, we will not substitute our findings of fact for the findings of fact of the trial court, unless the judgment is clearly against the manifest weight of the evidence (*Chamblin v. New York Life Ins. Co.*, 292 Ill. App. 532) ; and as a reviewing court, we will accept the findings of the chancellor upon questions of fact, based upon the statements of witnesses whom he saw and heard testify, unless such findings are clearly and palpably erroneous (*Kinnah v. Kinnah*, 184 Ill. 284; *Mousette v. Monarch Life Ins. Co.*, 309 Ill. App. 224).

We find that the action of the court in modifying the decree, is not against the manifest weight of the evidence, and that his findings are not clearly and palpably erroneous, but that such action, in modifying the decree, is in harmony with the weight of the evidence and not in any way erroneous. The action of the trial court in modifying the decree, being correct and proper, is hereby affirmed.

*Affirmed.*

Mr. Justice Dady dissents: I disagree with the majority opinion. In my opinion the judgment of the trial court is palpably and manifestly against the weight of the evidence, and should be reversed.

Plaintiff, Kenneth Kent, hereinafter referred to as "Kent," and defendant Georgia Kent were married November 17, 1933. Their only child, William, was born July 31, 1934.

On November 9, 1935, Kent obtained a decree of divorce from Georgia Kent on the ground of desertion, which decree awarded the custody of the boy to the maternal grandmother, Amy Dietzel. The decree ordered Kent to pay Amy Dietzel $2.50 a week for the support of the boy.

On September 27, 1941, Kent filed this petition asking that he be given the custody of the boy, and on a hearing the trial court gave him such custody. Georgia Kent, the mother of the boy, has perfected this appeal from such order. Kent has not filed any brief or otherwise appeared to contest this appeal.

At the time of the filing of the complaint for divorce the boy was in an orphanage. After the divorce decree was entered he continued to remain in an orphanage for about one year, and was then taken by his maternal grandmother to her home, where he remained for about two years. The maternal grandmother then placed him in the home of Mr. and Mrs. Arthur Kremmel, who are not related to any of the parties, where he continued to remain about two and one-half years, and was living at the time of the hearing in the trial court on the petition for custody.

It is important to consider what if any interest and affection toward the boy has been exhibited by his mother and by his father.

The mother is a W. P. A. worker. Mrs. Kremmel testified "The boy's mother sees him two or three times a week, whenever she is not working. She works every day." The mother testified, "I have not had the custody

directly. I do want the custody because he is mine. I have consented to Mrs. Kremmel adopting the boy only to block this case. I think I am earning enough to take care of him and would be glad to take him to my mother's or my home."

Evidently at the time of the divorce proceeding, although the boy was in an orphanage, Kent did not desire the legal custody of the boy, or was unable to pay for his care in the orphanage or otherwise, for in his complaint for divorce he alleged that the maternal grandmother was a proper person to have such custody, and requested that she be given such custody, and the decree of divorce entered on his motion gave her such custody. As far as the record shows he took no steps, legal or otherwise, to get the custody until the filing of this petition on September 27, 1941. On the hearing of such petition he testified "I stayed away from him for five years. I saw him four or five times in five years," although during such period the boy was only "about sixteen miles away." His only explanation for staying away was, "I stayed away to keep him from being dissatisfied." Before about Easter Sunday, in 1941, he did not visit the boy while the boy was at the Kremmel home, but after such Easter Sunday he visited the boy about a dozen times and took the boy twice to the Kent home with the permission of Mrs. Kremmel. Aside from the formal allegation in his petition that he and his present wife are "willing and anxious to have the custody of said child," the only specific reason alleged in such petition for desiring such custody is, "that it works a great hardship on him to maintain William Kenneth Kent in the home of strangers." Although on the present hearing he testified, "I love this boy," he also testified, "It is true that I have made the statement many times that he is not my child. I still love him, but I talk about him that way." He was then asked, "Were you loving him when you were telling people he was not your child?" His reply, and only explanation, was, "Yes, sir, it was one

of my ways of keeping him from being kidnapped." No evidence of any threatened kidnapping was offered.

Another pertinent inquiry is as to the present ability of Kent to properly care for the boy. Although he was required to pay only $2.50 per week for such care, he is admittedly behind in his payments. His explanation is that for a time he was out of employment. The record does not show how much he is in arrears, but does show that he gave toward such payments a $5 check dated September 7, 1941, which check was returned by the bank unpaid with the notation "Account closed." It will be noted that this check was dated only twenty days before the present petition was filed. Concerning this check, he was asked, "This check with which you made a payment isn't any good, is it?", and he replied "That I don't know. It says 'account closed.' When my funds got low I closed my account at the bank to keep from overdrawing and this check was held out until I closed my account. . . . When I closed my account I thought I had $20.00 in the bank. I usually carried about $25.00 in the bank. . . . I am willing to take up that check at my first opportunity. . . . My explanation is that Mrs. Dietzel waited too long to put that check in the bank. I closed my account. The bank notified me a check was overdrawn and asked me to come in and make it up. It was not this check. . . . So I went and made it up and told them to close my account."

Kent testified that he now earns $29 a week. He remarried on February 6, 1937, and by such remarriage has a daughter aged seventeen months at the time of the hearing. On the hearing he testified that he and his present wife live "in two rooms." She testified "My husband and I live in two rooms. One is the kitchen. We eat in the kitchen. The other is a bedroom. We would have room for the other little fellow in our bedroom. He would sleep in the same bedroom with my husband and me and the little girl. He is going on to eight years of age."

At the time of the hearing the boy had been living in the home of Mr. and Mrs. Kremmel for about two and one-half years. The Kremmels have no child. They have been married eight years, during all of which time they have lived in the same home, which contains three rooms. Mr. Kremmel earns between $54 and $57 every two weeks. They send the boy to grade school. Mrs. Kremmel testified "I personally take him to Sunday School every Sunday. . . . I have become very attached to him." She further testified that she had consulted an attorney about adopting the child. Kent testified: "I have visited the boy since he has been at the Kremmel home. It is a good home. They are good church people. They can provide him with a good home. I know they are deeply attached to him." Mrs. Kremmel further testified that it cost her and her husband about $5 per week to keep the boy; that payments of $2.50 per week have been made to her either by the mother or maternal grandmother, but "I would continue to keep him whether I received that $2.50 per week or not."

The boy was not called as a witness, probably because of his immaturity. Kent testified that on one occasion, the date not being given, when he had the boy at his home over the week end, when the boy was leaving he cried and asked Kent's present wife if she wouldn't ask Kent if there wasn't some way, if he couldn't come home. Aside from the competency of this testimony, we all know how easily and frequently a child's mind is changed by slight favors.

Aside from the comments which I have made, the foregoing is, I believe, a fair statement of all the material evidence.

The primary question for consideration in all cases involving the custody of children is, what is for the best interest of the child? (*People v. Schaedel*, 340 Ill. 560; *Mahon v. People ex rel. Robertson*, 218 Ill. 171; *Umlauf v. Umlauf*, 128 Ill. 378; *Hewitt v. Long*, 76 Ill. 399.)

While it is recognized that a parent is entitled to a preferential right to the custody of his child, this right will be made to yield if the welfare of the child demands it. (*People v. Weeks,* 228 Ill. App. 262; *People v. Nelson,* 235 Ill. App. 410.) The rule to be applied in such cases is thus stated by the court in *People v. Porter,* 23 Ill. App. 196, "In controversies of this character, three matters are to be regarded; the rights of the parent, the rights and interests of the person or persons to· whom the care and custody of the infant child has been given by the parent, and the welfare of the child; and of these three the last mentioned is the matter of primary and paramount importance. The father is prima facie entitled to the custody of his minor child, but he may forfeit the right by misconduct or voluntarily relinquish it. If he, by agreement, surrenders the custody of his child to another, such surrender is not absolute· and irrevocable; but, if a contention arises in the courts with reference to such relinquishment, much will depend upon the characters and habits of the contending parties, the fact whether the reclamation is sought within a short time or after the lapse of years, and the circumstances of the particular case. All other considerations, however, will be subordinated to the interest and welfare of the child."

It is my opinion that the evidence manifestly shows that the interests and welfare of this 8-year-old boy will not be best served by removing him from the admittedly good home of the Kremmels, who are deeply attached to him, and placing him in the home of his father, where it is proposed by the present wife of the father that such boy occupy the one and only bedroom with his father and such wife and their little girl. Although Kent testified that he loves the boy, yet in my opinion his statement that he has many times stated that the boy was not his child, but "I talk about him that way," shows either such a lack of affection or such a lack of character as makes Kent unfit to have the custody of such child. As was said by Justice McALISTER in *Hewitt v. Long,* 76 Ill.

399, "The theory of natural affection which tenderly clings to a child whom a parent has never scarcely seen, and upon whom he has bestowed no care, may do for works of the imagination, but will not, in the absence of proof, be presumed in a judicial investigation."

I feel that the majority opinion attaches too much importance to the rights of Kent merely as father, and overlooks the more important question of the best interests of the child.