BLIFFERT, Appellant, v. BLIFFERT, Respondent.

*September 7—October 3, 1961.*

318

For the appellant there was a brief by *Phillips, Phillips, Hoffman & Lay* of Milwaukee, and oral argument by *N. Paley Phillips*.

For the respondent there was a brief by *Lowry, Hunter & Tikalsky* of Waukesha, and oral argument by *Donald J. Tikalsky*.

FAIRCHILD, J.  1. *The finding of Betty Jean's unfitness.* Her irregular conduct with McGee had continued for about one year before February, 1960. At that time the police happened to learn of it while investigating another matter. Betty Jean saw McGee only twice after that, and testified that she was ashamed and had stopped going with him. The court found that the children saw McGee in the home when he had stayed all night, and there was evidence that the oldest child was aware that on occasion he slept with her mother.

Continued conduct of the type described would surely support a finding of unfitness. Her expression of repentance and reform may have been sufficient to have justified the court in viewing past acts as mistakes she would not repeat. But in appraising her character and probable future conduct, the court had the benefit of personal observation.

"This court has repeatedly held that the matter of custody of children in divorce actions is a matter peculiarly within the jurisdiction of the trial court, who has seen the parties,

had an opportunity to observe their conduct, and is in much-better position to determine where the best interests of the children lie than is an appellate court." [1]

2. *The finding of Bruce's fitness.* The 1957 Iowa marriage of Wisconsin residents within one year after divorce was void. Secs. 245.03 (2) and 245.04 (1), Stats. 1957. Consequently cohabitation was illicit until the marriage in 1959. The county court, however, did not consider that this established that Bruce was unfit. Many years ago this court said:

"This act was of course a violation of law, but it does not necessarily demonstrate depravity of heart or moral unfitness to bring up a child." [2]

It has been held that a mother's adultery after divorce with a man whom she later marries does not conclusively establish that she is unfit to have custody. [3]

3. *The best interests of the children.* The all-important consideration in this matter is the promotion of the welfare of the children. [4] The trial court's ruling as to custody will not be disturbed unless it is clearly against the weight of the evidence. [5] The county court directed the county department of public welfare to investigate the parties and their homes, and file a report within two weeks. Because of the limitation on time, the social worker reported her observations but disclaimed ability to make a complete evaluation. She did stress the need for caution before changing custody; the advantage of moving a child to a home having better stand-

---

[1] *Brown v. Brown* (1960), 9 Wis. (2d) 322, 327, 101 N. W. (2d) 48.

[2] *Jensen v. Jensen* (1919), 168 Wis. 502, 505, 170 N. W. 735.

[3] *Templeton v. Templeton* (1948), 254 Wis. 92, 35 N. W. (2d) 223.

[4] Sec. 247.24, Stats.; *Zillmer v. Zillmer* (1960), 8 Wis. (2d) 657, 100 N. W. (2d) 564, 101 N. W. (2d) 703.

[5] *Hamachek v. Hamachek* (1955), 270 Wis. 194, 202, 70 N. W. (2d) 595.

ards may be outweighed by disturbance resulting from loss of security. It seems fair to say that the social worker implied that she would not change custody in this case on the basis of the information she had. Her opinion, however, was not conclusive nor does it establish that the county court abused its discretion or determined the matter against the weight of the evidence.

4. *The exclusion of an offered letter.* Counsel for Betty Jean suggests that Bruce and Roselin carried on an improper and illicit relationship before their divorces, and argues that therefore it is not for the best interests of the children to live with them. The two couples had been friends. One divorce was granted in June and one in August, and Bruce and Roselin were married in November, all in 1957. The supposition that affection and understanding grew up between them as the relationships between the original couples were disintegrating is not improbable.

The divorce between Betty Jean and Bruce was granted to her, he having failed to answer and a stipulation between them having been approved by the court. The court found the existence of cruel and inhuman treatment, but none of the findings related to improper association. Betty Jean was found fit to have the care of the children, but there was no finding that Bruce was fit or unfit.

In support of Betty Jean's present claim of improper association between Bruce and Roselin, her counsel produced a handwritten letter, apparently directed to Bruce and signed "Roz." Bruce testified that he did not recognize the handwriting and Roselin denied it was hers. Betty Jean was not asked about it, although her counsel stated in an offer of proof that the letter was found by her in Bruce's wallet and that the proof would show that it was received by Bruce prior to the divorce. The court sustained objection on the ground that the letter involved matters occurring before the judgment.

The letter expresses the writer's love and indicates that the feeling has existed for a long time. Although it refers to past embraces, it is difficult to read into it other implications claimed by counsel. Counsel for Betty Jean argues that she is entitled to a new trial so that the letter can be admitted as evidence of improper association and as impeachment of Bruce's and Roselin's denials that they were in love before they separated from their former spouses.

The question before the court in 1960 was the moral fitness of the home of Bruce and Roselin in the future. The claimed marital infidelity occurred, if at all, more than three years before under very different circumstances. The depth of moral failure which it demonstrated could be appraised only by examining the background in which it occurred. The subsequent marriage appears to be happy and enduring. The record contains nothing to indicate the contrary. We could find no abuse of discretion in refusing to admit the offered letter.

The court has discretion to exclude evidence of habits and conduct occurring so long prior to the time of hearing as to shed little light upon the present fitness of a party to have custody of a child.[6]

If the county court meant by its ruling that as a matter of law it could not receive evidence of occurrences prior to the divorce, it was in error. The original findings and judgment did not determine whether Bruce was fit or unfit. The rule of *res judicata* previously recognized by this court in custody matters does not apply where the fitness of a

---

[6] 2 Nelson, Divorce and Annulment (2d ed.), p. 251, sec. 15.47. See also *Schwalenberg v. Schwalenberg* (1940), 65 Ohio App. 217, 29 N. E. (2d) 617, and *Voorhees v. Hutchison* (Ohio, 1951), 108 N. E. (2d) 750. In *S—— v. G——* (Mo. App. 1957), 298 S. W. (2d) 67, and *Rex v. Rex* (Mo. App. 1948), 217 S. W. (2d) 391, however, the trial courts were held properly to have received evidence of misconduct occurring before the divorce and several years before the hearing on custody.

parent has not been determined. In *Lewis v. Lewis* [7] the court said, at page 580:

"If in the first proceeding between these parties there had been an adjudication that the mother was a fit and proper person to have the custody of the children, that adjudication would have been *res adjudicata* on that subject and a bar to the admission in these later proceedings of evidence as to events preceding the first adjudication. However, the rule applied in the *Wall Case* permits the record of the first proceeding being brought in in this action since there was no prior adjudication that the mother was a fit and proper person to have the custody." See *Wall v. Wall* (1948), 252 Wis. 339, 31 N. W. (2d) 527.

We have also suggested that the doctrine of *res judicata* is not to be applied to custody matters with the same strictness as to others, and that, "It is logical that the interest of the child and of the public in the child's welfare should not be concluded by the failure of the parents to bring relevant and important facts to the attention of the court." [8]

While it is not clear that the county court considered that it had discretion to admit evidence of misconduct of Bruce and Roselin prior to the divorce, it seems to us upon a full review of the record improbable that the letter would have affected the court's decision had the letter been in evidence.

*By the Court.*—Order affirmed.

---

[7] (1948), 252 Wis. 576, 32 N. W. (2d) 227.

[8] *Zillmer v. Zillmer* (1960), 8 Wis. (2d) 657, 663, 100 N. W. (2d) 564, 101 N. W. (2d) 703.